**PROVIDENCE HOSPITAL, Appellant,**

v.

**Debra G. DORSEY, Appellee.**

**No. 91–CV–1348.**

District of Columbia Court of Appeals.

Argued May 11, 1993.

Decided Dec. 15, 1993.

---

Robert J. Burstein for appellant. Bruce H. Cherkis, Bethesda, MD, filed a brief on behalf of appellant.

No appearance was made on behalf of appellee.

Before ROGERS, Chief Judge, and STEADMAN and KING, Associate Judges.

STEADMAN, Associate Judge:

Appellee Debra Dorsey failed to appear at a scheduling conference in an action brought by appellant Providence Hospital (the "hospital") to recover the balance due on a hospital bill. The trial court entered default against appellee subject to *ex parte* proof. At the *ex parte* proof hearing, attended only by the hospital, the trial court found a failure of proof of any underlying personal liability of appellee to the hospital and entered judgment in favor of appellee. We agree with the hospital that the trial court erred in the entry of judgment for appellee and accordingly vacate the judgment and remand for further proceedings.

## I.

Appellee admitted herself to Providence Hospital on May 5, 1989, and received treatment from that date until May 22, 1989. The hospital charged appellee $7,714.74 for these services. Appellee's insurance paid $2,500.00 of the bill[1] and the bill was reduced further by $2,014.25 due to an allowance agreement between the hospital and appellee's insurance carrier, leaving a balance of $3,200.49. The evidence indicated that the hospital sent statements on a monthly basis to appellee

over a period of time advising appellee of the balance due and that phone calls were also made to appellee concerning the bill. The testimony also showed that appellee registered no objection in connection with these notifications, but the bill remained unpaid.

The hospital filed suit on April 11, 1991.[2] On April 30, 1991, the trial court received a letter from appellee, which the court construed as an answer, informing the court that upon appellee's admittance, she had given the hospital information about her insurance and that "[i]t was my understanding that Blue Cross and Blue Shield would be responsible for paying the bill in full."[3] A settlement and scheduling conference was set and ultimately held on September 27, 1991. Appellee did not appear at the conference and the trial court entered default against appellee subject to *ex parte* proof. At the *ex parte* proof hearing, the hospital put on evidence of appellee's treatment and of its efforts to collect the balance of the bill. Although appellee did not appear at this hearing, the trial court entered judgment for appellee for want of proof, finding that the hospital had failed to show that appellee ever agreed to personally pay any of the hospital charges beyond what her insurance would pay.

## II.

■ We note at the outset that the trial court's granting of default subject to *ex parte* proof against appellee was presumably made as a sanction pursuant to Super.Ct.Civ.R. 16, *see* Rule 16(*l*)[4] & 16–II,[5] and not pursuant to

---

1. Uncontradicted testimony by a hospital employee indicated that appellee's insurance policy stated that it would pay a flat rate of $2500 for the type of services for which appellee was admitted.

2. The complaint stated that "Plaintiff sues Defendant(s) for the sum of $3,200.49 representing the balance due and owing for goods sold and delivered and/or services rendered and/or an account stated between plaintiff and defendant(s)". Appellee's husband was also named as a defendant and a default judgment was entered against him by the clerk on May 30, 1991. That action is not at issue in this appeal.

3. On May 22, 1991, the hospital filed a motion for judgment on the pleadings. This motion was denied by the trial court on July 1, 1991, "as defendant's answer asserts that she did not be-

lieve herself to owe the charges and that her mental state was such that she did not agree to them."

4. Rule 16(*l*) provides in pertinent part that:
   If a party or a party's attorney ... fails to appear at a scheduling or pretrial conference, ... or fails to participate in good faith or has otherwise not complied with the requirements of this Rule, the Court, upon motion or its own initiative, may make such orders with regard thereto as are just, including any of the orders provided in Rule 37(b)(2)(B), (C), and (D).
   Rule 37(b)(2)(B), (C) and (D) in turn provide for a variety of sanctions, the most stringent of which is entry of a default judgment "against the disobedient party."

5. Rule 16–II provides:
   If counsel or a party proceeding pro se fails to appear at a pretrial, settlement, or status con-

Super.Ct.Civ.R. 55(a),[6] in light of the fact that appellee had filed what the trial court deemed to be an answer in the case. *See Larry M. Rosen & Assocs., Inc. v. Hurwitz,* 465 A.2d 1114, 1117–18 (D.C.1983); *Bonded Adjustment Ass'n., Inc. v. Doss,* 286 A.2d 853, 854 (D.C.1972). The hospital argues that once the default was entered, the only issue left open for determination by the trial court was the amount of recovery and that the court erred in relying upon the asserted failure of the hospital to prove any underlying liability. The hospital relies on *Firestone v. Harris,* 414 A.2d 526 (D.C.1980) for the proposition that an entry of default in itself establishes the nondefaulting party's right to recover, and thus, it argues, the only issue properly before the trial court at the sanctions hearing was the amount of recovery. However, *Firestone* is inapplicable in the instant case in that the trial court there entered default against the defaulting party subject to *ex parte* proof of damages. Here, the trial court entered default against the appellee subject to *ex parte* proof, without qualification.

■ Thus, here default was entered with the contingency that the hospital prove appellee's underlying liability as well as its damages. This form of entry of conditional default was entirely permissible. A trial court has broad discretion in fashioning the appropriate sanction against a party for failure to attend a pretrial conference. *Durham v. District of Columbia,* 494 A.2d 1346, 1350 (D.C.1985); *see also Firestone v. Harris, supra,* 414 A.2d at 527. Likewise, at the *ex parte* hearing, the court was well within its discretion in concluding that, given the answer of appellee asserting that she understood that the hospital would look only to the insurance company for payment and the absence of any express written agreement by her to pay any charges, appellee's underlying liability was in sufficient doubt to preclude the entry of any sort of *ex parte* default judgment against her as a sanction for her nonappearance at the scheduling conference. *See Durham v. District of Columbia, supra,* 494 A.2d at 1350 ("trial court must be especially cautious where it chooses to impose the very severe sanction of dismissal").

■ The conclusion that the trial court did not abuse its discretion in declining to enter a default judgment *against* appellee is, however, a different issue from whether the trial court erred in granting a final judgment in *favor* of appellee at the sanctions hearing. At that hearing, the hospital presented a prima facie case of an implied in fact contract which would establish the underlying liability of appellee.[7] *See Vereen v. Clayborne,* 623 A.2d 1190, 1193 (D.C.1993); *Brown v. Brown,* 524 A.2d 1184, 1190 (D.C.1987).[8] There was

ference, the Court may enter a default, a dismissal of the case with or without prejudice, or take such other action, including the imposition of penalties and sanctions, as may be deemed appropriate.

6. Rule 55(a) provides in pertinent part:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules, the Clerk or the Court shall enter the party's default.

7. Whether the hospital's recovery would be determined by quantum meruit or the amount billed is a distinct matter. In justifying the latter measure of recovery, the hospital asserts an account stated. Proof of a pre-existing debtor-creditor relationship is a prerequisite to liability on a theory of account stated, the amount stated being an independent contract fixing the exact amount of liability under the pre-existing rela-

tionship. 1A C.J.S. *Account Stated* § 2(a) (1985). We have no occasion here to decide whether an implied contract relating to medical treatment may constitute the debtor-creditor relationship underlying recovery under an account stated theory or whether the sole measure of damages available to the hospital is the reasonable value of its services. *See generally Exxon Corp. v. International Concrete Corp.,* 335 A.2d 236, 237–38 (D.C.1975); *First Nat'l. Realty Corp. v. Impact Advertising Inc.,* 206 A.2d 579, 580 (D.C.1965); *Chinn v. Lewin,* 57 U.S.App.D.C. 16, 18–19, 16 F.2d 512, 513–15 (1926); *Riley v. Mattingly,* 42 U.S.App.D.C. 290, 294–95 (1914); 1A C.J.S. *Account Stated, supra,* §§ 21, 22, 26 & 50(a); 6 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS, § 1313 (1962).

8. The requirements for recovering quantum meruit under a theory of a contract implied in fact are 1) valuable services rendered by the plaintiff; 2) for the person from whom recovery is sought;

no dispute that appellee voluntarily came to the hospital and personally sought and received the services that the hospital provided.[9] Generally, gifts are not presumed in the law, and a person who both requests and receives valuable services impliedly has the obligation to pay reasonable compensation for them. *See* JOHN D. CALAMARI AND JOSEPH M. PETRILLO, CONTRACTS 19 (2d ed. 1977);[10] 42 C.J.S. *Implied Contracts* § 26 (1991).

A contrary understanding or expectation may of course be shown. This might be done by introducing evidence, through appellee's testimony, for example, that she had informed the hospital that she expected her insurance to cover the costs (i.e., a third party would pay).[11] But here no such competent evidence was in fact presented. While the trial court could permissibly refuse to enter default against the appellee in light of her unverified answer, it could not use that answer as the basis to completely defeat the hospital's claim so as to warrant the entry of judgment in appellee's favor, quite a different matter. Appellee's allegations, articulated in her unsworn letter/answer, may be viewed as a potential defense to the hospital's claim for recovery. However, the validity of the defense should be considered only pursuant to testimony made under oath or other evidence admitted at a trial on the merits. *See* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1182 (1990) ("The federal rules recognize that pleadings are not an end in themselves. 'Under the Rules ... a case consists not in the pleadings, but the evidence, for which the pleadings furnish the basis. Cases are generally to be tried on the proofs rather than the pleadings.'" (citing *De Loach v. Crowley's, Inc.,* 128 F.2d 378, 380 (5th Cir.1942))).

Accordingly, the judgment in favor of appellee is hereby vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

3) which services were accepted and enjoyed by that person; and 4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid. *Brown v. Brown, supra,* 524 A.2d at 1190.

We need not explore here a related alternate theory of liability based upon the principle of quasi-contract, also termed a contract implied in law, for which recovery is measured by quantum meruit on a theory of unjust enrichment. *See Vereen v. Clayborne, supra,* 623 A.2d at 1193–94.

9. The hospital presented a form, signed by appellee, in which appellee states: "I hereby apply for admission to Providence Hospital as a patient and request that I be furnished appropriate hospital care and services for the condition(s) for which I am being admitted."

10. "When [an agreement] is manifested by conduct, it is said to be implied in fact. If A telephones a plumber to come to A's home to fix a broken pipe, it may be inferred that A has agreed to pay the plumber a reasonable fee for his services although nothing is said of this."

11. We note that appellee's letter never expressly alleges that the hospital was put on notice at the time the services were rendered that appellee did not expect to pay any amount.