Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued November 21, 2003      Decided February 10, 2004

No. 02-5325

ANNE K. ALBRECHT, ET AL.,
APPELLANTS

v.

COMMITTEE ON EMPLOYEE BENEFITS OF THE
FEDERAL RESERVE EMPLOYEE BENEFITS SYSTEM, ET AL.,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 00cv00317)

————

*Philip J. McNutt* argued the cause for appellants. With him on the briefs were *Michael P. Bentzen*, *Nicholas Woodfield*, *Glenn A. Mitchell*, and *David U. Fierst*.

*Paul J. Ondrasik Jr.* argued the cause for appellees. With him on the brief were *Katherine H. Wheatley*, Assistant

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

General Counsel, Board of Governors of the Federal Reserve System, *Morgan D. Hodgson*, and *Alice E. Loughran*.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Claiming breach of fiduciary duty and unjust enrichment, employees of the Board of Governors of the Federal Reserve System seek the return of mandatory contributions that they made into a defined-benefit pension plan after actuaries determined the plan was well-funded. They also seek to terminate their obligation to make future contributions. The district court dismissed the claims for lack of jurisdiction and for failure to state a claim. We affirm.

## I.

The Federal Reserve System, composed principally of the Board of Governors and the twelve regional Federal Reserve Banks, provides a retirement plan for all of its employees. The retirement package encompasses two distinct pension plans, the "Board Plan"—the one at issue in this case—and the "Bank Plan." Both are defined-benefit plans that, regardless of investment performance, entitle beneficiaries to fixed periodic payments upon retirement. The Board and regional Banks bear the risk of any funding deficiency: if the plans become underfunded, the employers must make up the difference and pay the promised benefits.

The difference between the two plans stems from a change in Social Security coverage of federal employees. Federal Reserve Board employees hired before January 1, 1984, pay no Social Security taxes and receive no Social Security benefits with respect to their employment with the Board. To cover the retirement needs of these employees, the Board of Governors created the Board Plan. As a condition of employment, employees hired before January 1, 1984, made mandatory payroll contributions into the Plan, set at seven percent of salary.

In 1983, Congress amended the Social Security Act to extend coverage to Board employees hired on or after January 1, 1984. *See* Social Security Amendments of 1983, Pub. L. No. 98–21, 97 Stat. 65 (1983). For these employees, and for all regional Bank employees, the Board created the Bank Plan. That Plan requires no employee contributions, but unlike employees covered by the Board Plan, those covered by the Bank Plan pay Social Security taxes and their retirement payments are adjusted to account for their Social Security benefits.

Appellants, a putative class of current and former Board employees hired before January 1, 1984, allege that for each of the past twenty years, the Board Plan actuary determined that the Plan had more than sufficient assets to satisfy liabilities, including both benefits and administrative expenses. According to appellants, retirement plan annual reports show that Board Plan assets were 132% of projected and accrued liabilities in 1984 and were 167% of such liabilities in 1994. Based on these actuarial estimates, the Board has not contributed to the Board Plan since 1985.

Citing these developments, appellants asked the Executive Secretary, the Plan's chief administrative officer, "for a refund or suspension of mandatory employee contributions." Letter from Comm. on Appeals, J.A. at 71. The Executive Secretary denied their request, and the Committee on Appeals, the entity charged with deciding disputes regarding the payment of benefits, affirmed. The Committee explained that because the claim involved not benefits, but rather a disagreement over the pension plan's design, neither the Executive Secretary nor the Committee on Appeals had authority to resolve the matter.

Appellants then filed suit in the U.S. District Court for the District of Columbia, seeking recovery of all contributions made since the actuary deemed the Board Plan sufficiently funded plus the investment return on those contributions. They also sought an injunction prohibiting the Board from requiring further payments into the pension plan. Appellants argued that by refusing to exercise their discretion to reduce

mandatory contributions, the Board of Governors and the Committee on Employee Benefits (CEB), the Plan's administrator, breached their fiduciary duties to beneficiaries. Appellants also alleged that after the death of the last beneficiary, Board Plan surplus funds would revert to the Board or to the Bank Plan, thereby unjustly enriching the Board or the regional Banks. Appellants made several other claims, alleging breach of contract, unconstitutional taking, and age discrimination.

In the first of two opinions, the district court dismissed these last three claims, a dismissal that appellants do not challenge. *See Albrecht v. Comm. on Employee Benefits of the Fed. Reserve Employee Benefits Sys.*, No. 00–317, slip op. at 9–12, 15–18 (D.D.C. Mar. 30, 2001). Finding that only the Board of Governors has authority to modify the mandatory contribution level, the court also dismissed the fiduciary duty claims against the CEB. *Id.* at 8. In the second opinion, the district court dismissed the remaining claims. *See Albrecht v. Comm. on Employee Benefits of the Fed. Reserve Employee Benefits Sys.*, No. 00–317, slip op. at 16–17 (D.D.C. Sept. 17, 2002). The court determined that the Board enjoyed sovereign immunity, *id.* at 7–8, and that because appellants' fiduciary duty claim was essentially a breach of contract action, it could be brought only in the U.S. Court of Federal Claims under the Tucker Act, *id.* at 13. In the alternative, the district court held that appellants failed to state a claim for breach of fiduciary duty. *Id.* at 14–15. The court also dismissed the unjust enrichment claim, concluding that such a claim may not be brought where, as here, a contract governs the challenged conduct. *Id.* at 15–16. Finally, because the request for injunctive relief rested solely on the failed claims, the district court dismissed it as well. *Id.* at 17.

In this appeal, we must decide (1) whether the Board enjoys sovereign immunity against the breach of fiduciary duty claim, and if so, whether any statute waives that immunity, and (2) whether appellants properly stated a claim for unjust enrichment against the Board and the regional Banks. Reviewing the district court's decisions *de novo, see Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 283

F.3d 339, 341 (D.C. Cir. 2002) (*de novo* review of dismissal for lack of subject matter jurisdiction); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (*de novo* review of dismissal for failure to state a claim), we consider each issue in turn.

## II.

We begin with appellants' effort to escape the consequences of the district court's conclusion that the Board enjoys sovereign immunity. Despite naming the Board of Governors as a defendant, appellants insist that they sued not the Board of Governors, the governmental entity composed of seven individuals appointed by the President and confirmed by the Senate to formulate monetary policy, *see* 12 U.S.C. § 241 (2000), but rather a so-called "Plan Board"—a nongovernmental entity composed of those same seven individuals that has authority over the pension plan but performs no governmental functions. Setting aside that the Board Plan expressly identifies the Board of Governors as the entity with authority to modify the employee contribution level and that nothing in the Board Plan suggests the existence of an alternative "Plan Board," the Board points out that appellants never made this argument in the district court and that the claim is therefore waived. Conceding that their complaint nowhere refers to a "Plan Board," appellants urge us to consider this newly raised argument, asserting that we did so in similar circumstances in *United States v. Rapone*, 131 F.3d 188 (D.C. Cir. 1997). In that case, we decided that although the defendant failed to bring the relevant statute to the district court's attention, we would consider his argument that he was statutorily entitled to a jury trial, emphasizing that the defendant was "not attempting to raise the issue of a jury trial for the first time on appeal," but instead offering "new legal authority for the position that he repeatedly advanced before the district court—that he was entitled to have his case tried before a jury." *Id.* at 196. By contrast, appellants here present not new legal *authority* for an argument raised in the district court, but rather an entirely new *argument*—that the defendant is not the "Board of Governors" identified in the complaint. We thus agree with the Board that the argument is waived. *See, e.g., District of*

*Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984).

Appellants also claim that the Committee on Employee Benefits is a proper defendant. According to appellants, the CEB has authority to modify the employee contribution level, and it breached its fiduciary duty by refusing to reduce required contributions. Although appellants did name the CEB in their complaint, we agree with the district court that only the Board possesses such authority. Section 7.1 of the Board Plan states: "The Board of Governors may increase or decrease the current seven percent (7%) required Mandatory Contribution upon sixty (60) days prior notice to Current Participants." Benefit Structure for Employees of the Bd. of Governors of the Fed. Reserve Sys. Hired Prior to January 1, 1984, J.A. at 115. Appellants point to a provision in the Federal Reserve System's retirement plan, which covers both the Board and the Bank Plans, that arguably suggests the CEB has authority to change the employee contribution level. *See* Ret. Plan for Employees of the Fed. Reserve Sys., J.A. at 55 ("The Committee [on Employee Benefits] shall from time to time adopt a rate or rates of contribution for all benefits and other expenses for all members . . . and the Board of Governors shall . . . make contributions to the Plan . . . ."). But the retirement plan expressly states that its provisions do not govern if they conflict with the Board Plan, *id.*, and section 8.1(b) of the Board Plan expressly denies the CEB such authority: the CEB has "no power to add to, subtract from or modify any of the terms of the [Board Plan]," Benefit Structure for Employees of the Bd. of Governors, J.A. at 121.

Despite this clear prohibition against the CEB modifying pension plan terms, appellants argue that the very existence of the Committee on Appeals demonstrates that the Board's authority to adjust contribution levels is not exclusive. This argument rests on appellants' mischaracterization of the Committee on Appeals's rejection of their claim. Although the Committee concluded that the Board's refusal to terminate employee contributions was neither unfair nor unreasonable, before reaching that conclusion the Committee made clear—in language appellants fail to cite—that it rejected the

appeal because the issue was beyond its authority. *See* Letter from Comm. on Appeals, J.A. at 71 (noting that the claim was not "a matter for this Committee" and that "the claim appeal procedure [was] the wrong mechanism to resolve this matter"). Contrary to appellants' assertion, therefore, the Board's authority to modify the employee contribution level is exclusive.

Having concluded that as to appellants' breach of fiduciary duty claim, the Board of Governors is the only proper defendant, we turn to the question of the Board's sovereign immunity. Neither party disputes the Board's status as a "NAFI," a nonappropriated fund instrumentality that receives no funding through congressional appropriations. *See United States v. Hopkins*, 427 U.S. 123, 125 n.2 (1976). Although the Supreme Court has never held that NAFIs, as instrumentalities of the United States government, necessarily enjoy sovereign immunity, it has established that where NAFIs are "arms of the government deemed by it essential for the performance of governmental functions" and "share in fulfilling the duties entrusted to [the federal government]," they "partake of whatever immunities it may have under the [C]onstitution and federal statutes." *Standard Oil Co. of Cal. v. Johnson*, 316 U.S. 481, 485 (1942). More generally, we have concluded that "[f]ederal agencies or instrumentalities performing federal functions *always* fall on the 'sovereign' side of [the] fault line; that is why they possess immunity that requires waiver." *Auction Co. of Am. v. FDIC*, 132 F.3d 746, 752 (D.C. Cir. 1997).

Applying this standard, we have no doubt that the Board of Governors enjoys sovereign immunity in this case. *See Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 132 F.3d 985, 987–88 (4th Cir. 1997) (holding that the Board of Governors enjoys sovereign immunity against a contract action). An integral part of the federal government, the Board conducts monetary policy, regulates banking institutions, and maintains the stability of the nation's financial system. *See* 12 U.S.C. § 248 (2000 & Supp. III 2003). Moreover, the statute that empowers the Board authorizes it to retain employees "necessary to conduct the business of the

[B]oard" and to fix their "salaries and fees." *Id.* § 248(*l* ). Thus, when the Board establishes its employees' compensation package, including the terms of their pension plan, it acts under statutory authority in furtherance of its governmental functions. Therefore, at least with regard to the existence of sovereign immunity, appellants' claim against the Board is little different from a claim against the United States. The question, then, is whether any statute waives that immunity.

Appellants insist that they may proceed with their claim because it falls within the Administrative Procedure Act's waiver of sovereign immunity for "action[s] in a court of the United States seeking relief other than money damages and stating a claim that an agency . . . acted or failed to act in an official capacity." 5 U.S.C. § 702 (2000). But even for claims that are not for money damages, the APA confers no "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* The Tucker Act is one such statute. *See* 28 U.S.C. § 1491 (2000). It states that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." *Id.* § 1491(a)(1). We have held that the Tucker Act "impliedly forbids—in APA terms—not only district court awards of money damages, which the Claims Court may grant, but also injunctive relief, which the Claims Court may not." *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992). We have therefore held that the APA does not waive sovereign immunity for contract actions brought against the government in a federal district court. *Id.* Accordingly, the district court lacks jurisdiction if appellants' breach of fiduciary duty claim is essentially a contract action.

Turning, then, to that question—whether appellants' claim sounds in contract—we consider both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). According to appellants, their rights derive not from contract, i.e., the Board Plan, but

from the Trust document and from the common law. We disagree.

The Trust document requires the Trustee, Chase Manhattan Bank, to safeguard plan assets from misuse and requires the CEB to ensure benefit payments in accordance with the pension plan. *See* Ret. Plan for Employees of the Fed. Reserve Sys. Trust Agreement, J.A. at 185. The Trust says nothing at all about either the Board's responsibilities or the level of employee contribution—the issues at stake in this case. Appellants' argument that their rights derive from the common law also fails. Where a challenged action does not implicate a trustee's duties, the common law of trusts cannot apply. *See Hurd v. Ill. Bell Tel. Co.*, 136 F. Supp. 125, 135 (N.D. Ill. 1955), *aff'd* 234 F.2d 942 (7th Cir. 1956) ("[T]he court is unable to follow the plaintiffs' reasoning by which they transform the creator of the trust into the trustee. If misconduct were charged against Bankers Trust, the law of trusts would be relevant. But the plaintiffs' rights in relation to the Bell System defendants are contractual."). Just so here. The Board's refusal to modify the employee contribution level involves only the Board's role as employer and creator of the pension plan; it implicates neither the authority of the CEB or the Trustee, nor any fiduciary duties they may have.

The only remaining source from which a fiduciary duty could arise is the pension plan. Courts have long held that employees participating in a retirement plan not governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–461, enter into a contractual relationship with their employer. *See, e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989) ("Actions challenging an employer's denial of benefits before the enactment of ERISA were governed by principles of contract law."). Indeed, appellants themselves expressly pled that the Board Plan created a contractual relationship. *See* Pls. Am. Compl. ¶ 128 ("The Board of Governors and the Committee [on Employee Benefits] entered into a contract for the benefit of employees of the Board of Governors hired prior to January 1, 1984. . . ."); *id.* ¶ 130 ("Pursuant to said contract, the Board of Governors

and the Committee have required and continue to require Plaintiffs to contribute seven percent (7.00%) of their wages to the Board Plan."). Although carefully avoiding any reference to a contract claim in this court, appellants nonetheless cast their arguments in essentially contractual terms. Specifically, appellants' counsel maintained at oral argument that the Board breached a fiduciary duty when it refused to exercise its discretion under section 7.1 of the Board Plan to cease requiring mandatory contributions. According to counsel, that refusal conflicts with section 10.2 of the Board Plan, which he claimed requires the Board to use all funds exclusively for beneficiaries. Not only does this assertion amount to still another serious misrepresentation—counsel failed to mention section 10.2's last phrase which makes it clear that the Board's "exclusive benefit" obligation applies only "prior to the satisfaction of all liabilities" to employees—but counsel's reliance on the Board Plan provisions demonstrates that appellants' claim does in fact sound in contract. This is also clear from the remedy appellants seek, for it is the terms of the Board Plan that will determine whether the relief sought—recovery of past contributions and termination of future payments—is available. *See Megapulse*, 672 F.2d at 968.

Although we continue to "[reject the view] . . . that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act," *id.* at 967–68, appellants' claim turns *entirely* on the terms of a contract, i.e., the Board Plan. We therefore agree with the district court that the Tucker Act deprives it of jurisdiction over appellants' breach of fiduciary duty claim. *See, e.g.*, *Woodbury v. United States*, 313 F.2d 291, 296 (9th Cir. 1963) (finding that although the plaintiffs alleged a breach of fiduciary duty by a government agency, the action was "essentially for breach of a contractual undertaking," and therefore covered by the Tucker Act).

## III.

Appellants' unjust enrichment claim against the Board and the regional Banks requires little discussion. As we indicat-

ed, their claim against the Board rests on the terms of the Board Plan, and "there can be no claim for unjust enrichment when an express contract exists between the parties." *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997); *cf. United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 247 (D.C. Cir. 1996) ("Unjust enrichment . . . rests on a contract implied in law, that is, on the principle of quasi-contract. This . . . form of recovery is possible in the absence of any contract, actual or implied in fact."). As to the claim against the regional Banks, we need not decide whether there is, as the Board insists, a contract between appellants and the regional Banks that would preclude the claim. Because nothing in the Board Plan requires the Board either to terminate employee contributions or to make refunds to employees should the Plan have a surplus, any "enrichment" the Banks would enjoy if the Bank Plan receives surplus funds could not possibly be unjust. We therefore agree with the district court that appellants failed to state a claim for unjust enrichment.

## IV.

By suing to require the Board to terminate future payments and to refund past contributions in excess of amounts required to fund the Board Plan, appellants, in effect, seek to change the terms under which they accepted employment with the Board of Governors. This court has no authority to grant such relief.

The judgment of the district court is affirmed.

*So ordered.*