CYR, Senior Circuit Judge.
 

 Appellant David J. Noonan, trustee in bankruptcy of David C. Rauh (“Debtor”), challenges various bankruptcy court rulings — later affirmed by the district court— declining to set aside certain prepetition transfers to Kuei Fong Rauh, the Debtor’s wife, and disallowing the Trustee’s post-judgment motion to amend the complaint, findings, and judgment relating to three fraudulent-conveyance claims belatedly asserted against Mrs. Rauh. We affirm the judgment, as amended to reflect an additional voidable transfer to Mrs. Rauh.
 

 I
 

 BACKGROUND
 

 In 1976, the Debtor, Gary Stahelski, and a third individual no longer involved in the case, founded a partnership, Environmental Water Systems (“E.W.S.”), which was to engage in the plumbing and heating business. Six years later, the same individuals formed a corporation, E.W.S. Realty, Inc. (“Realty”),
 
 *48
 
 which developed real property for sale or lease. The principal lenders for the various real estate development projects undertaken by Realty were Commerce Bank & Trust Co. (“Commerce Bank”) and Country Bank for Savings (“Country Savings”). The loans obtained to finance the Realty projects were secured by mortgages on the various properties under development and were guaranteed by Realty, as well as by the Debtor and Stahelski in their individual capacities. During 1988, the Debtor, Stahelski, and Vincent and Ernest Osterman engaged in a real estate development project in their individual capacities. Around the same time, these four individuals formed Pioneer Valley Partners No. 1, Inc. (“Pioneer”), a corporation which was to develop a shopping mall known as Pioneer Plaza. The Pioneer Plaza project financing came from the real estate sellers and Commerce Bank. The loans were secured by mortgages on the Pioneer Plaza real estate and guaranteed by the various • corporations, the Debtor, Stahelski, and the Ostermans.
 

 For a time, E.W.S. and Realty were reasonably successful, especially during 1986, 1987 and 1988. As the Massachusetts real estate market slumped in 1989, however, the Debtor’s financial position deteriorated, due to difficulties in obtaining lessees for space in the Pioneer Mall, a slowdown in the construction business, and the heavy indebtedness incurred with E.W.S. and/or Realty for services performed in connection with the Pioneer Plaza project. E.W.S. and Realty in turn became deeply indebted to third parties. By May 1989, the Debtor realized that he and Stahelski would be unable to meet the $200,000 mortgage payment due the sellers of the Pioneer Plaza real estate in June and an additional payment due Country Savings around the same time.
 

 Between June 1 and September 2, 1989, Mrs. Rauh unilaterally withdrew $127,758 from various joint accounts maintained in the names of both spouses and deposited the proceeds in accounts she either held jointly with her daughter or in her own name as trustee for her son. The bankruptcy court found that these transfers were made by Mrs. Rauh with actual intent to remove the monies in the joint spousal accounts from the reach of the Debtor’s creditors.
 

 On June 28, 1989, the Debtor suddenly absconded with $9,000 withdrawn from an unspecified joint spousal account. Mrs. Rauh sought an explanation from Stahelski, who described the dismal financial picture confronting him and the Debtor and suggested that the Debtor might have left with another woman. The Debtor resurfaced approximately two weeks later, however, and Stahelski terminated the Debtor’s employment with Realty shortly thereafter. At about the same time, the E.W.S. partnership was dissolved.
 

 The Debtor sued Stahelski to recover the value of his interests in E.W.S. and Realty. Mrs. Rauh joined the action, claiming damages for emotional distress caused by her dealings with Stahelski following the Debt- or’s disappearance. The suit was settled on July 23, 1991 (the “Stahelski Settlement”), with the Debtor receiving vehicles and equipment of little value in return for relinquishing all interests in E.W.S. and Realty to Stahelski; Mrs. Rauh received $15,000 in cash and a $40,000 promissory note payable to Realty.
 
 [1]
 
 She continued to receive all payments made on the $40,000 note until well after the Debtor filed a voluntary chapter 7 petition on March 24,1992.
 

 In due course, the Trustee commenced an adversary proceeding to set aside several transfers to Mrs. Rauh, individually and as next friend of the Rauh children. As the challenged transfers all occurred more than one year before bankruptcy,
 
 see
 
 Bankruptcy Code § 548, the Trustee invoked Bankruptcy Code § 544(b) and chapter 109A of the Massachusetts General Laws (“ch.l09A”) — the Massachusetts Uniform Fraudulent Conveyance Act (“UFCA”) — as grounds for avoiding them.
 
 [2]
 

 
 *49
 
 At trial, the Trustee managed to persuade the bankruptcy court to set aside only the transfer of the Debtor’s joint interest in the marital home and the transfer of the $40,000 promissory note to Mrs. Rauh in connection with the Stahelski Settlement. Thereafter, the Trustee moved to amend the complaint, findings, and judgment to conform with the evidence.
 
 See
 
 Fed. R. Bankr.P. 7015(b), 7052(b), 9023(a); Fed.R.Civ.P. 15(b), 52(b), 59(a). The proposed amended complaint alleged additional fraudulent transfers. Nearly a year after trial, the bankruptcy court denied the postjudgment motion on the mistaken ground that the Trustee had failed to file a motion to amend the complaint to conform with the evidence.
 
 See infra
 
 Section II.B.
 

 In addition to the ruling at trial — refusing to set aside Mrs. Rauh’s withdrawals from the joint accounts — the Trustee now challenges the bankruptcy court’s postjudgment rulings refusing to set aside: the $15,000 cash payment Mrs. Rauh received in the Stahelski Settlement; a $6,565.31 deposit, on March 27, 1992, to Mrs. Rauh’s own bank account,, comprised of three checks dated two weeks prior to the Debtor’s chapter 7 petition, payable to the Debtor and endorsed over to Mrs. Rauh; and $3,786.76 in deposits to Mrs. Rauh’s own bank account, between September 17, 1991 and February 12, 1992, consisting of several checks from the Debt- or’s customers made payable to Mrs. Rauh.
 

 II
 

 DISCUSSION
 

 A. The Joint-Account Withdrawals
 

 The threshold matter for our consideration is whether the Trustee adequately preserved the claims asserted on appeal. A thorough review of the entire record discloses that the theory advanced by the trustee on appeal in support of his claims to the various amounts withdrawn from the joint accounts is altogether different than that litigated below. Accordingly, we conclude that these claims were abandoned below.
 

 The Trustee argued before the bankruptcy court that Massachusetts law establishes a rebuttable presumption that the spouse whose funds are deposited in a joint spousal account (“contributing spouse”) is presumed to have intended that each spouse own a one-half interest in the deposited funds.
 
 See Gibbons v. Gibbons,
 
 296 Mass. 89, 4 N.E.2d 1019, 1020 (1936). Thus, the Trustee contended throughout the proceedings below that the Debtor was the contributing spouse; that he owned one-half the monies in these joint accounts; that Mrs. Rauh, the party challenging the aforementioned presumption, had not carried her burden,
 
 see Blanchette v. Blanchette,
 
 362 Mass. 518, 287 N.E.2d 459, 463 (1972), of establishing that the contributing spouse intended to retain ownership of all monies deposited;
 
 [3]
 
 and, therefore, that either Mrs. Rauh had converted the Debtor’s one-half share, or the Debtor had conveyed his one-half share to Mrs. Rauh in fraud of creditors. Accordingly, the Trustee claimed, the Debtor’s “transfers” were voidable under Bankruptcy Code § 544(b) and ch. 109A.
 

 The bankruptcy court instead ruled that a joint spousal account creates a very different presumption; namely, that the contributing spouse intended to give the noncontributing spouse a beneficial interest in
 
 all
 
 monies deposited to their account, subject only to the contributing spouse’s coequal, unilateral right, at any time, to withdraw
 
 all
 
 monies on deposit,
 
 see Noonan v. Rauh (In re Rauh),
 
 164 B.R. 419, 423 (Bankr.D.Mass.1994) (citing,
 
 e.g., Blanchette,
 
 287 N.E.2d at 463). The bankruptcy court also held that the party challenging the presumption
 
 (viz., the Trustee
 
 ) may rebut it only by adducing evidence that the contributing spouse intended to convey no present beneficial interest to the noncontributing spouse.
 
 See id.
 
 (citing,
 
 e.g.,
 
 
 *50
 

 Ross v. Ross,
 
 2 Mass.App.Ct. 502, 314 N.E.2d 888, 893 (1974),
 
 cert. denied,
 
 420 U.S. 947, 95 S.Ct. 1329, 43 L.Ed.2d 425 (1975)). The bankruptcy court further noted that the Trustee had neither alleged nor established that the Debtor intended to convey no beneficial interest in these monies to Mrs. Rauh.
 
 See id.
 

 The bankruptcy court reasoned as follows: (1) either spouse has the unilateral
 
 legal right
 
 to withdraw all monies in their joint spousal account, thereby divesting the other spouse of any beneficial interest,
 
 see id.
 
 at 424 (citing
 
 Heffernan v. Wollaston Credit Union,
 
 30 Mass.App.Ct. 171, 567 N.E.2d 933, 937 (1991)); thus, in 1989 Mrs. Rauh simply withdrew her
 
 own 100%
 
 beneficial interest in the funds; (2) consequently, any “transfer” of the Debtor’s beneficial interest in the deposited monies to Mrs. Rauh had occurred not at the time of the withdrawals by Mrs. Rauh in 1989, but much earlier
 
 (viz.,
 
 not later than the dates on which the Debtor made the respective deposits to their accounts); (3) since the withdrawals by Mrs. Rauh in 1989 consisted entirely of her own funds, no “transfer” of property of the Debtor could have taken place; and (4)
 
 a fortiori,
 
 no conversion or conveyance, fraudulent or otherwise, occurred at that time.
 
 See id.
 

 The
 
 position adopted by the Trustee on appeal bears no resemblance to his litigation stance below, as the Trustee now contends that he
 
 did rebut
 
 the legal presumption posited by the bankruptcy court.
 
 [4]
 
 The Trustee relies for support upon Mrs. Rauh’s trial testimony that the Rauhs always paid their household expenses from their joint accounts
 
 (i.e.
 
 the accounts were mere “convenience” accounts), and argues that her testimony conclusively rebutted any presumption that the Debtor intended to give Mrs. Rauh a beneficial interest in the deposited funds.
 

 Thus, the Trustee utterly abandons the interpretation of Massachusetts law which formed the bulwark on which he based his claims before the bankruptcy court: that (1) the creation of a joint spousal account by the Debtor triggered a legal presumption that the Debtor intended to give Mrs. Rauh only a 50% interest in the deposited funds; and (2) that
 
 Mrs. Rauh
 
 — not
 
 the Trustee
 
 — bore the burden of rebutting that presumption. Indeed, on appeal the Trustee implicitly acknowledges the validity of the bankruptcy court’s divergent interpretation of Massachusetts law
 
 (viz.,
 
 the presumption that all deposited funds were intended as a gift to Mrs. Rauh), simply arguing instead that he did rebut the presumption, as identified by the bankruptcy court, by establishing that the Rauhs used their joint spousal accounts to defray household expenses. As the Trustee has not challenged the bankruptcy court’s delineation of the underlying presumption on appeal, we can only conclude that he has abandoned the original — and much broader — legal theory relied on below. Consequently, we express no opinion on the validity
 
 vel non
 
 of the bankruptcy court’s ruling.
 
 [5]
 

 See Baybank Middlesex v. Ralar Distribs., Inc. (In re Ralar Distribs., Inc.),
 
 69 F.3d 1200, 1204 n. 5 (1st Cir.1995) (noting that theories neither briefed nor argued on appeal are deemed waived);
 
 Executive Leasing Corp. v. Banco Popular de Puerto Rico,
 
 48 F.3d 66, 68 (1st Cir.) (On appeal, “[w]e will not rely upon arguments and allegations that are developed only in the [trial] court pleadings.”), cer
 
 t.
 
 denied,-U.S.-, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995);
 
 Nelson v. Taglienti (In re Nelson),
 
 994 F.2d 42, 45 n. 6 (1st Cir.1993);
 
 see also Carducci v. Regan,
 
 
 *51
 
 714 F.2d 171, 177 (D.C.Cir.1983) (judicial system assumes assistance of counsel in framing arguments and citing authority).
 

 Nor need we decide the only claim actually presented by the Trustee on appeal;
 
 viz.,
 
 that Mrs. Rauh’s “household expense” or “convenience account” testimony conclusively rebutted any presumption that the Debtor intended to donate all monies in the joint spousal accounts to her.
 
 [6]
 
 As the bankruptcy court itself correctly noted, the Trastee never contended below that the Debtor had created these accounts with intent to pass no present beneficial interest to Mrs. Rauh.
 

 A party may not raise new arguments for the first time on appeal.
 
 See, e.g., Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.),
 
 993 F.2d 915, 935 (1st Cir.),
 
 cert. denied,
 
 510 U.S. 914, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993).
 
 [7]
 
 The Trustee’s waiver cannot be excused simply because the raw facts he now considers determinative of his newfound legal theory may have been before the bankruptcy court.
 
 See United States v. Slade,
 
 980 F.2d 27, 31 (1st Cir.1992) (irrelevant that party is debuting only “new arguments” and not “new facts” on appeal). Nor was the newfound theory properly preserved below merely by the Trustee’s generalized argumentation as to the ownership of the Rauhs’ joint accounts.
 
 See id.
 
 at 30-31 (noting that appellant must have articulated the specific arguments below);
 
 McCoy v. Massachusetts Inst. of Tech.,
 
 950 F.2d 13, 22 (1st Cir.1991) (“Overburdened trial judges cannot be expected to be mind readers. If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review.”),
 
 cert. denied,
 
 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992). As the bankruptcy court was never afforded an opportunity to consider the theory and authorities now advanced by the Trustee,
 
 [8]
 
 nor to make any predicate factual findings, we decline the invitation to do so on appeal.
 
 See In re Mark Bell Furniture Warehouse, Inc. v. D.M. Reid
 
 Assocs.
 
 (In re Mark Bell Furniture Warehouse, Inc.),
 
 992 F.2d 7, 9 (1st Cir.1993) (“ ‘If lawyers could pursue on appeal issues not properly raised below, there would be little incentive to get it right the first time and no end of retrials.’ ”) (quoting
 
 Poliquin v. Garden Way, Inc.,
 
 989 F.2d 527, 531 (1st Cir.1993)).
 
 [9]
 

 B.
 
 Amendments to Complaint
 

 After the bankruptcy court entered final judgment in February 1994,
 
 see supra
 
 p. 49, the Trustee moved to amend the complaint to conform to the evidence at trial, and
 
 *52
 
 to amend the judgment, to set aside,
 
 inter alia,
 
 a $15,000 cash transfer Mrs. Rauh received in the Stahelski Settlement, and transfers to Mrs. Rauh of several checks from the Debtor’s customers.
 
 [10]
 

 Rule 7015(b) of the Federal Rules of Bankruptcy Procedure (applying Fed. R.CivJP. 15(b) to adversary proceedings) states that
 

 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues....
 

 Fed. R. Bankr.P. 7015(b). Under Rule 7015(b), motions to amend a complaint to conform to the evidence admitted at trial are liberally allowed.
 
 See, e.g., Brandon v. Holt,
 
 469 U.S. 464, 471 & n. 19, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985) (permitting amendment to pleadings pursuant to Federal Rule of Civil Procedure 15(b) even after Supreme Court mandated remand).
 

 A post-trial motion to conform the judgment to the evidence should not be allowed, however, unless the opposing party expressly or impliedly agreed to try the matter in question.
 
 See Luria Bros. & Co. v. Alliance Assurance Co.,
 
 780 F.2d 1082, 1089 (2d Cir.1986). Even so, amendment should not be allowed if the opposing party demonstrates “unfair prejudice.”
 
 See DCPB, Inc. v. City of Lebanon,
 
 957 F.2d 913, 917 (1st Cir.1992);
 
 Lynch v. Dukakis,
 
 719 F.2d 504, 509 (1st Cir.1983);
 
 Scully Signal Co. v. Electronics Corp. of Amer.,
 
 570 F.2d 355, 362 (1st Cir.1977) (“Although Rule 15(b) by its terms requires amendment of the pleadings whenever an issue has been tried by express or implied consent, courts have refused to grant such motions if amendment would prejudice one of the parties, such as by requiring the presentation of additional evidence.”),
 
 cert. denied,
 
 436 U.S. 945, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978); see
 
 also Morgan and Culpepper, Inc. v. Occupational Safety & Health Review Comm’n,
 
 676 F.2d 1065, 1066 (5th Cir.1982). The term “unfair prejudice” refers to whether a party “had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory.”
 
 See Browning Debenture Holders’ Comm. v. DASA Corp.,
 
 560 F.2d 1078, 1086 (2d Cir.1977) (quoting 3 James Wm. Moore et al.,
 
 Moore’s Federal Practice
 
 ¶ 15.13[2], at 993 (2d ed.1966)).
 

 1.
 
 The Stahelski Settlement Transfer
 

 The stated basis for denying the Trustee’s motion to amend the judgment to conform with the evidence introduced at trial, in relation to certain cash transfers from Stahelski to Mrs. Rauh, was the mistaken understanding by the bankruptcy judge that the Trustee had never filed such a motion and that any amendment therefore would have been unfair because Mrs. Rauh had not had an opportunity to present a defense. The bankruptcy court docket sheet reveals, however, that the Trustee did file such a motion on April 19,1994, and that Mrs. Rauh later filed a reply. As the denial therefore constituted an “abuse of discretion,” the judgment must be amended provided the motion was meritorious.
 
 See Webb v. Hiykel,
 
 713 F.2d 405, 407-08 (8th Cir.1983) (appellate court reverses trial court and orders judgment where plaintiff was entitled to relief on unpled theory and defendants would not experience undue prejudice).
 

 At trial, without objection, the Trustee introduced competent evidence of the $15,000 cash payment Mrs. Rauh received from Stahelski.
 
 See Conjugal Partnership of Jones v. Conjugal Partnership of Pineda,
 
 22 F.3d 391, 400-01 (1st Cir.1994) (“One sign of implied consent is that issues not raised by the pleadings are presented and argued without proper objection by opposing counsel____ Under Rule 15(b), lack of consent is manifested by an objection on the ground that the evidence is not within
 
 *53
 
 the issues raised by the pleadings.”) (citation and internal quotation marks omitted). Mrs. Rauh contends on appeal, however, that she did not object at trial because the Trustee introduced the $15,000 cash payment only to prove that her receipt of the promissory note had been fraudulent.
 
 See DCPB, Inc.,
 
 957 F.2d at 917 (“Consent to the trial of an issue may be implied if, during the trial, a party acquiesces in the introduction of evidence which is
 
 relevant only to that issue.”)
 
 (emphasis added);
 
 Luria Bros. & Co.,
 
 780 F.2d at 1089 (“That such evidence, relevant to both pled and unpled issues, was introduced without objection does not imply consent to trial of the unpled issues, absent some obvious attempt to raise them.”);
 
 Ellis v. Arkansas Louisiana Gas Co.,
 
 609 F.2d 436, 440 (10th Cir.1979) (“Implied consent may not be inferred merely because evidence relevant to a properly pleaded issue incidentally tends to prove a fact not within the pleadings.”),
 
 cert. denied,
 
 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980). We disagree.
 

 At trial, the Trustee maintained that the Stahelski Settlement proceeds received by Mrs. Rauh constituted fraudulent conveyances under eh. 109A because (1) the Debt- or, with intent to keep assets from his creditors, diverted to Mrs. Rauh the bulk of the consideration he otherwise would have received in settlement of his claims against Stahelski; and (2) none of the settlement proceeds received by Mrs. Rauh were attributable to the settlement of her own tort claim for infliction of emotional distress.
 
 See supra
 
 p. 48. Accordingly, the only conceivable purpose of the Trustee’s evidentiary proffer relating to the $15,000 cash payment was to establish the
 
 amount
 
 of the Stahelski Settlement transfer which was voidable. The evidence offered by the Trustee was not even remotely probative of whether the Debtor had conveyed the $40,000 promissory note with fraudulent intent, nor whether the transfer of the promissory note constituted consideration for Mrs. Rauh’s relinquishment of her tort claim.
 

 Furthermore, Mrs. Rauh has not demonstrated that any “unfair prejudice” would result from the postjudgment relief requested by the Trustee.
 
 See DCPB, Inc.,
 
 957 F.2d at 917;
 
 Scully Signal Co.,
 
 570 F.2d at 362. At trial, the bankruptcy court expressly rejected her contention that the StahelskiSettlement payments were in satisfaction of her emotional distress claim. The court found instead that the Debtor thereby fraudulently transferred
 
 his
 
 interests in E.W.S. and Realty indirectly to Mrs. Rauh,
 
 see supra
 
 p. 48, a finding Mrs. Rauh does not challenge on appeal. Nor has Mrs. Rauh suggested that her contention in regard to the Trustee’s $15,000 fraudulent-transfer claim differed significantly from her defense to the surrender of the $40,000 promissory note,
 
 see supra
 
 p. 48, which took place in the identical circumstances.
 
 See Modern Elec., Inc. v. Ideal Elec. Sec. Co.,
 
 81 F.3d 240, 247 (D.C.Cir.1996) (complaint amended to include unjust enrichment claim, after parties had tried similar
 
 quantum meruit
 
 claim);
 
 Morgan and Culpepper, Inc.,
 
 676 F.2d at 1068 (“Federal Rule of Civil Procedure 15(b) contemplates amendments in cases where relevant issues have been litigated.”);
 
 Cunningham v. Quaker Oats Co.,
 
 107 F.R.D. 66, 70-71 (W.D.N.Y.1985) (new plaintiff allowed to be named in complaint, where defense to original plaintiffs claim was primarily legal in nature, the defense had already been tried and it applied to both the original and new plaintiff).
 

 As Mrs. Rauh implicitly consented to try the fraudulent-conveyance claim relating to the $15,000 cash transfer she received in the Stahelski Settlement, and she has not shown that any unfair prejudice would result from the postjudgment relief requested by the Trastee, the motion to conform the complaint and the judgment with the evidence should have been allowed.
 

 2.
 
 Checks from Debtor’s Customers
 

 The bankruptcy court likewise denied the Trustee's motion to amend the judgment to set aside alleged fraudulent transfers of several checks from the Debtor’s business customers made payable directly, or endorsed over, to Mrs. Rauh.
 
 See
 
 11 U.S.C. § 548(a)(2) (transfers by insolvent within one year of bankruptcy petition);
 
 id.
 
 § 549 (post-petition transfers). Although the bankruptcy court once again acted on the mistaken belief
 
 *54
 
 that the Trustee had filed no postjudgment motion to amend the complaint,
 
 see supra
 
 Section II.B, we may affirm its ruling on any ground supported by the record.
 
 See Max Sugarman Funeral Home, Inc. v. A.D.B. Investors,
 
 926 F.2d 1248, 1253 n. 9 (1st Cir. 1991). As Mrs. Rauh did not agree to try this issue, we decline to disturb the bankruptcy court ruling.
 

 The record discloses that Mrs. Rauh was never on fair notice of these claims. The checks in question were material to count VI of the complaint as amended prior to trial,
 
 see DCPB, Inc.,
 
 957 F.2d at 917;
 
 Luria Bros. & Co.,
 
 780 F.2d at 1089;
 
 Ellis,
 
 609 F.2d at 440, wherein the Trustee alleged that funds presently in Mrs. Rauh’s various bank and mutual fund accounts were property of the chapter 7 estate, either because Ms. Rauh had converted them from the Debtor, or the Debtor had fraudulently conveyed them to her.
 
 See supra
 
 pp. 48-49. Count VI focused on transfers from joint accounts to accounts held in Mrs. Rauh’s name alone
 
 (e.g.
 
 “between November, 1988 and November, 1989, the Defendant and/or the Debtor transferred funds ... at various- times from jointly owned bank accounts to other bank accounts.”).
 
 See supra
 
 Section II.A. In her answer Mrs. Rauh asserted that “these accounts eontain[ed] monies which were earned or derived solely by her efforts and were not monies earned or derived from any effort of the debtor.”
 

 The dispute at trial likewise concerned whether the monies in the joint accounts had derived solely from Mrs. Rauh’s own efforts, or from the Debtor’s.
 
 See supra
 
 note 3. Mrs. Rauh testified that she was the sole source of these monies. The Trustee, in turn, used the Debtor-customer checks made payable to Mrs. Rauh to impeach her credibility by way of demonstrating that the Debtor — not Mrs. Rauh — -was the source of those particular deposits to their joint accounts.
 

 Thus, neither the Trustee’s introduction of these Debtor-customer checks into evidence, nor the Trustee’s examination of the witnesses, fairly signaled an intention to establish that the Debtor had transferred these
 
 specific checks
 
 to Mrs. Rauh with fraudulent intent, within the meaning of 11 U.S.C. §§ 548(a)(2) and 549. Rather, it was not until
 
 after trial
 
 that the Trustee mentioned these specific transfers to Mrs. Rauh’s accounts from the Debtor’s business customers. As the Trustee thus faded to alert Mrs. Rauh to his intention, her failure to object at trial did not connote implicit consent to try the unpled issue.
 
 See Modern Elec., Inc.,
 
 81 F.3d at 247;
 
 United States v. 890 Noyac Road,
 
 945 F.2d 1252, 1257 (2d Cir.1991);
 
 Luria Bros. & Co.,
 
 780 F.2d at 1089.
 

 Although the Trustee’s unpled claims may well have prevailed at trial, we cannot assume that Mrs. Rauh would not have been able to establish her present contention— that the checks were not property of the chapter 7 estate — had she been afforded fair notice and opportunity to resist the unpled claims at trial.
 
 [11]
 

 See 890 Noyac Road,
 
 945 F.2d at 1259 (although opposing party already may have presented all the evidence she had, “[g]iven the confused context in which this proof was presented, however, we decline to speculate about how [the defendant] might have dealt with the issue ... had it been squarely presented.”);
 
 Morgan and Culpepper, Inc.,
 
 676 F.2d at 1068 (“We deem improper the Commission’s prejudgment of possible defenses which a company may assert____ Where amendment of pleadings is permitted on the basis of the second half of Fed.R.Civ.P. 15(b), the Commission may not deny the petitioner the opportunity to present new defenses by stating the
 
 ex parte
 
 conclusion that all possible defenses are meritless.”). As Mrs. Rauh was not afforded fair notice that these newly minted Debtor-customer check claims were being interjected by the Trustee at trial, the Trustee was not entitled to amend either the complaint or the judgment.
 

 Ill
 

 CONCLUSION
 

 Accordingly, the judgment is amended to set aside the $15,000 cash payment received
 
 *55
 
 by Mrs. Rauh in the Stahelski Settlement. In all other respects, the judgment is affirmed. No costs.
 

 SO ORDERED.
 

 [1]
 

 . Meanwhile, the Debtor had deeded his lenancyby-the-entireties interest in the marital home to Mrs. Rauh on January 28, 1991, for nominal consideration.
 

 [2]
 

 . The Uniform Fraudulent Transfer Act ("UFTA”) did not take effect in Massachusetts until well after these transactions.
 
 See
 
 Mass. Gen. Laws ch. 109A (1997),
 
 amended by
 
 
 *49
 
 St.1996, ch. 157 (approved July 8, 1996) (replacing UFCA provisions with UFTA).
 

 [3]
 

 . Mrs. Rauh contended at trial that the funds in these joint accounts derived from assets owned by her alone; she was therefore the contributing spouse; and she had intended that all the funds remain her property. The Trustee, on the other hand, introduced evidence that the funds in these accounts derived from the earnings and investments of the Debtor or represented proceeds from jointly-held assets. The bankruptcy court found, however, that the Debtor was the sole contributing spouse.
 

 [4]
 

 . The Trustee also points out that the expert witness presented by Mrs. Rauh testified that all monies in these joint spousal accounts were assets of the Debtor. However, this expert testimony was offered to prove that the Debtor was not "insolvent,” as of 1988, for purposes of ch. 109A, § 4. There has been no attempt by the Trustee to explain how this expert testimony bears upon the Debtor's donative intent in establishing the joint accounts.
 
 See United States v. Zannino,
 
 895 F.2d 1, 17 (1st Cir.) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived”),
 
 cert. denied,
 
 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).
 

 [5]
 

 . Nor do we consider a quite different argument
 
 never
 
 raised by the Trustee — that even if Mrs. Rauh had a right to withdraw 100% of these funds, a voidable transfer of a property interest of the Debtor
 
 (i.e.
 
 his putative coequal, unilateral right to withdraw 100% of these funds, or his ownership interest in 50% of the funds) nonetheless occurred at the time Mrs. Rauh exercised her legal right to withdraw the funds.
 

 [6]
 

 . For one thing, Mrs. Rauh's trial testimony was not as dear, in context, as the Trustee suggests. When asked from what account the Rauhs' household expenses were paid, she responded: "We only have [sic] one checking account at that time. So it [sic] paid from the checking account.” The record reveals, however, that the Rauhs had many joint accounts in 1989. Consequently, it cannot be ascertained from the record which was the checking account.
 

 [7]
 

 . We consider arguments raised for the first time on appeal only in exceptional circumstances threatening a “clear miscarriage of justice.”
 
 See Playboy Enter., Inc. v. Public Serv. Comm'n of Puerto Rico,
 
 906 F.2d 25, 40 (1st Cir.),
 
 cert. denied,
 
 498 U.S. 959, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990). We discern no such exceptional circumstances in the present case.
 

 [8]
 

 . Even in the Trustee's postjudgment motion to amend the findings and judgment, there is no mention of the perceived relevance of Mrs. Rauh's testimony regarding the Rauhs' household expenditures.
 

 [9]
 

 .We note in passing, however, without deciding, that the authorities the Trustee cites on appeal do not appear to support the newfound theory.
 
 See Levy v. Levy,
 
 309 Mass. 486, 35 N.E.2d 659, 661-62 (1941);
 
 Zak v. Zak,
 
 305 Mass. 194, 25 N.E.2d 169, 170-71 (1940);
 
 Rosman v. Rosman,
 
 302 Mass. 158, 19 N.E.2d 41, 42 (1939);
 
 Cram v. Cram,
 
 262 Mass. 509, 160 N.E. 337, 339-40 (1928);
 
 Moore v. Mansfield,
 
 248 Mass. 210, 142 N.E. 792, 793-94 (1924);
 
 Hutchinson v. Hutchinson,
 
 6 Mass.App.Ct. 705, 383 N.E.2d 82, 87 (1978). In each instance, the contributing spouse either averred or testified that he never intended to donate any beneficial interest in the account to the other spouse. The Trustee alludes to no comparable averment or testimony in the present record. Moreover, we have found no Massachusetts decision holding that mere evidence that household expenses were paid from joint accounts was necessarily relevant to, let alone conclusively rebutted, a presumption of donative intent. Finally, the Trustee adduced no competent evidence that the Rauhs used all their joint accounts to pay household expenses.
 
 See supra
 
 note 6.
 

 [10]
 

 . We review the bankruptcy court’s denial
 
 of
 
 the motion to amend the complaint only for abuse of discretion.
 
 See Lynch v. Dukakis,
 
 719 F.2d 504, 509 (1st Cir.1983).
 

 [11]
 

 . For example, at trial Mrs. Rauh testified that she had used personal funds to defray various business expenses because the Debtor’s checking account had been attached. Further, she represented that she had overpaid some of the Debt- or's suppliers and that their checks accordingly represented reimbursements of her overpayments.