James Bernard NELSON, Plaintiff,

v.

CITY OF CAMBRIDGE, Police Department of the City of Cambridge, and Unknown Officers, Defendants.

No. C.A. 98–10961–NG.

United States District Court,
D. Massachusetts.

June 2, 2000.

Cornelius J. Sullivan, Sullivan & Walsh, Mattapan, MA, for James Bernard Nelson, Plaintiff.

Arthur J. Goldberg, City Hall, Law Department, Cambridge, MA, for Cambridge, City of, Cambridge Police Department, Unknown Officers of the Cambridge Police Department, Defendants.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

On October 8, 1999, this Court granted defendants City of Cambridge and the Cambridge Police Department's motion for summary judgment on all claims brought by plaintiff, James Bernard Nelson ("Nelson") [docket entry # 20]. Although I found that the initial stop of Nelson was supported by reasonable, articulable suspicion, given the factual disputes regarding the length and manner of Nelson's detention, I reserved ruling on his claims[1] against the unknown officer defendants ("defendants"). Instead, I ordered the parties to brief the issue of whether the reasonableness of the scope of Nelson's detention must be decided by a jury or could be decided by the Court as a matter of law on summary judgment.

In their supplemental brief, defendants assert that, even assuming the truth of Nelson's allegations, they are entitled to judgment because the scope of the investigative detention was entirely reasonable. Nelson superficially matched the description of a breaking and entering suspect— African American, in the area of various breaks (Ellery Street in Cambridge), carrying what appeared to be a trash bag, moving erratically. The officers needed time to "check out" his story.

Nelson counters that, even if some of the investigatory steps taken were reasonable, the duration of the detention and the force employed were not, and transformed the stop into a de facto arrest. Within fifteen to twenty minutes, he was identified

as a house painter, employed at the Ellery Street address. He posed no danger to the officers, answered all their questions. His description, on closer look, did not match the suspect. He had an explanation for his behavior; he was coming from an unfamiliar direction. Nevertheless, the officers held him at gunpoint, frisked him, required him to remain with his hands on the hood of the car ("frisk position") for an extended period, and detained him for fifteen to thirty minutes more.

After reviewing the relevant Fourth Amendment standards submitted by the parties, I conclude that a reasonable jury could find that the investigative detention, as depicted by Nelson, exceeded the scope of a permissible *Terry* stop and amounted to an arrest without probable cause. Accordingly, defendants' motion for summary judgment [docket entry # 12] is **DENIED**.

Fifteen to thirty minutes, under such conditions, may not seem like much time in the scheme of things. But to a citizen, entitled to the protections of the Fourth Amendment, it is. He has a right to require that a police stop be no more intrusive than the circumstances require—not five minutes, not fifteen.

In addition, in his supplemental brief [docket entry # 24], Nelson seeks to amend his complaint to add the names of the unknown officer defendants. As defendants were put on notice as to which officers were involved in Nelson's detention well before the complaint was filed, they will not be prejudiced by this minor modification of Nelson's complaint.

Accordingly, Nelson's request to amend his complaint to add the names of the unknown officers is **GRANTED**.

## I. BACKGROUND

As the factual background of the incident is set forth in some detail in my

---

1. Count One: Civil Rights Violations (42 U.S.C. § 1983); Count Two: False Arrest;

Count Three: Violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11 H & I.

previous decision, there is no need to duplicate that discussion here. However, a brief review of the basis for the stop and the steps taken to dispel defendants' suspicions provides the necessary context for my conclusion that a jury could find that Nelson's detention, beyond the point necessary to dispel the officer's initial, reasonable suspicions, constituted an unreasonable seizure and violated his Fourth Amendment rights. I adopt Nelson's version of the disputed facts, as I am obliged to at this juncture.

At the time he was stopped, Nelson was in a section of Cambridge that was experiencing a high incidence of residential break-ins at midday that summer. Several aspects of Nelson's appearance and behavior led defendants to believe that he might be engaged in criminal activity and should be stopped for questioning:

1) Defendants were searching for a particular burglary suspect, Darrell Williams, who was, like Nelson, an African–American male [2] and was approximately [3] the same height and age as Nelson;

2) Nelson was jogging around the neighborhood, changing directions, and cutting through yards;

3) Nelson was carrying what appeared to be a green trash bag in his hand; and,

4) When Nelson stopped at 9 Ellery Street, he proceeded to the side of the building down a private driveway rather than going to the front door.

Upon stopping Nelson in the driveway of 9 Ellery Street, defendants attempted to discover who Nelson was and what he was doing at the building. Defendants stopped Nelson at gunpoint yelling "don't move, you mother," frisked him and removed a knife, and kept him in frisk position with his hands against the car while they commenced their investigation. In the first fifteen to twenty minutes of his detention, defendants discovered the following:

1) Nelson was carrying a windbreaker, not a trash bag;

2) Nelson's identification indicated that his name was not Darrell Williams, and a closer inspection of his physical characteristics revealed that he was much taller than the suspect;

3) Nelson was coming from the courthouse to 9 Ellery Street that morning and was not familiar with the area; and,

4) Nelson was, according to a tenant, there to paint the fire escapes.

Rather than releasing Nelson at this point, they allowed him to move out of the frisk position but continued to detain him between fifteen to thirty minutes longer while one officer phoned the courthouse to verify that Nelson had been in court that morning and another officer went into the building to find the superintendent and verify the tenant's identification of Nelson as a painter. Only after contacting the courthouse and confirming that Nelson was in court that morning, and failing to find the building superintendent, did defendants release Nelson.

2. Nelson claims that the stop was motivated primarily by the fact that he is a black male. A description of race and gender alone as part of a crime, independent of a specific identification, will rarely provide reasonable suspicion justifying a police search or seizure. *Brown v. City of Oneonta*, 195 F.3d 111, 118 (2nd Cir.1999). However, in my previous decision, I found that Nelson's race was only considered because it corresponded with that of a burglary suspect and was only one factor justifying the stop. Therefore, I found that defendants' consideration of Nelson's race did not affect the validity of the stop. *See, id.* at

119 (finding that city's policy of questioning suspects based on an actual physical description of a suspect was proper even where that description focused on race, gender, or age.)

3. Although Nelson was, in fact, five years older and seven inches taller than Williams, I found that these differences were not significant enough to render the initial stop invalid. In context with the other information the police obtained moments after the stop, it provided substantial reason to conclude Nelson was not the suspect.

## II. DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment will be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Hinchey v. NYNEX*, 144 F.3d 134, 140 (1st Cir.1998). The facts must be viewed "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Borschow Hospital & Medical Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 14 (1st Cir.1996).

### B. Arrest Without Probable Cause

■ There is no mechanical checklist to distinguish between investigative stops and detentions which amount to *de facto* arrests and therefore require probable cause. *United States v. Quinn*, 815 F.2d 153, 156 (1st Cir.1987). This determination is a fact-intensive one. It necessarily involves an evaluation of whether the measures taken in detaining the suspect can, under the circumstances, be reconciled with the limited nature of a *Terry*[4] stop or whether the arrest-like features of the stop, such as forcible restraint or lengthy detention, make the detention tantamount to an arrest. *United States v. Acosta–Colon*, 157 F.3d 9, 15 (1st Cir.1998).

■ Inquiries undertaken pursuant to a *Terry* stop must be reasonably related in scope to the justification for their initiation. *United States v. Ogden*, 703 F.2d 629, 634 (1st Cir.1983) (internal citations omitted). The needs of law enforcement must be balanced with the imperative that an investigatory stop be only as intrusive as is necessary to accomplish the task. *See, United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). In assessing whether a detention was too long to be justified as an investigative stop,

the court must determine whether the officers diligently pursued steps likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *Id.*

■ Upon detaining Nelson, defendants immediately took a number of steps to dispel their suspicion that he was attempting a break-in. They ascertained that he was carrying a windbreaker, not a trash bag, when the putative suspect carried a trash bag. They determined that his physical characteristics, notably his height, did not match that of the suspect, Darrel Williams. They were given a plausible explanation for his many changes of direction en route to 9 Ellery Street, namely that he was coming from the courthouse and was not familiar with the route from the courthouse to Ellery Street. Finally, Nelson was identified by a tenant of the building as a painter, and thus had a legitimate reason to be there. Both parties agree that this investigative process was completed after fifteen minutes. Nevertheless, Nelson maintains that defendants detained him for fifteen to thirty minutes more while they sought more corroboration. They looked for the building superintendent and phoned the courthouse to verify his whereabouts that morning.

Furthermore, Nelson describes his detention as having several arrest-like qualities. He claims that he was detained through the use of coercive measures: brandishing a weapon, frisking him, and keeping him in frisk position for an extended period.

Therefore, I conclude that if Nelson's account of the stop were credited a jury could find that this investigative detention exceeded the scope of the initial justification for the stop and amounted to a *de facto* arrest without probable cause. Accordingly, defendants' motion for summary judgment on Nelson's § 1983 claim of arrest without probable cause is **DENIED.**

---

4. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

## C. *Excessive Force*

Nelson claims that certain actions taken in the course of the stop, specifically brandishing a weapon, frisking him, and keeping him in the frisk position for an extended period, not only contributed to the arrest-like nature of the stop, but also amounted to excessive force in violation of his Fourth Amendment right to be free from unreasonable seizure.

The inquiry as to whether a particular seizure was reasonable or involved excessive force is an objective one. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The court must consider whether an objectively reasonable police officer under the circumstances at issue would have thought that the force used was necessary. *Id.* This assessment must make allowance for the fact that police officers are often required to make split second judgments regarding safety. *Id.* In evaluating the objective reasonableness of the force used, the court should consider: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight. *Id. Alexis v. McDonald's Restaurants of Massachusetts*, 67 F.3d 341, 352 (1st Cir.1995).

All of the actions Nelson alleges were taken by defendants are potentially justifiable components of investigatory detention pursuant to a valid *Terry* stop. An officer's brandishing of a weapon, conducting a pat-down or use of physical restraint on a suspect, does not, in and of itself, constitute a Fourth Amendment violation. *See, United States v. Acosta–Colon*, 157 F.3d 9, 18 (1st Cir.1998)(discussing the use of hand-cuffs during a *Terry* stop); *United States v. Trullo*, 809 F.2d 108, 113 (1st Cir.1987)(discussing the display of a gun by police during a *Terry* stop).

However, defendants have offered little evidence that such coercive measures were necessary in this particular case. They fail to demonstrate that Nelson posed a threat to themselves or to the community at large, either based on his actions or on their previous experience with persons suspected of housebreaks. *Compare, United States v. Walker*, 924 F.2d 1, 4 (1st Cir.1991)(frisk conducted pursuant to *Terry* stop reasonable given officer's testimony that in his experience burglars often carry weapons and that he feared for his safety when stopping burglary suspects at night in dimly lit area). They do not dispute that Nelson did nothing to delay or impede their investigation, nor did he pose a risk of flight. Finally, while burglary is a serious crime and posed a problem in Cambridge at the time Nelson was stopped, defendants have not established that either the nature of the crime they suspected was occurring, the setting, or the time of day, gave them reason to believe that Nelson might be armed or dangerous. *Compare, Trullo*, 809 F.2d at 113 (officer's display of gun reasonable due to nature of crime, narcotics dealing, and officer's previous encounters with suspects wielding weapons in that neighborhood).

Although the officers have presented a reasonable, articulable suspicion justifying the stop, they have not shown that the means allegedly used to effect the stop were necessary under the circumstances. Nelson's claims, if credited, could lead a jury to conclude that the force employed in effecting the stop was not objectively reasonable. Accordingly, defendants' motion for summary judgment on Nelson's § 1983 excessive force claim is **DENIED**.

## D. *False Arrest*

Typically, the elements of a false arrest claim are said to be: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and, (4) the defendant had no privilege to cause the confinement. *Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 3 n. 6 (1st Cir.1995). If defendants had a legal privilege to cause Nelson's

confinement, or detention, then their actions did not amount to false arrest. However, resolution of this issue hinges upon the questions posed by Nelson's § 1983 claim: 1) did the stop amount to an arrest; and, 2) if so, was this arrest supported by probable cause? Factual disputes regarding these questions preclude summary judgment for defendants on Nelson's § 1983 claim. Accordingly, defendants' motion for summary judgment on Nelson's false arrest claim is also **DENIED**.

### E. *Massachusetts Civil Rights Act*

M.G.L. c. 12, § 11H provides in part:

Whenever any person or persons ... interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise ... by any other person ... of rights secured by the constitution or laws of the United States or ... the Commonwealth, the attorney general may bring a civil action for injunctive or other ... equitable relief. . . .

Section 11I states that a person whose rights are interfered with "as described in section 11H," may "institute ... in his own name ... a civil action for injunctive and other appropriate equitable relief ..., including the award of compensatory damages."

The parties agree that the Massachusetts Civil Rights Act ("MCRA") should be read in harmony with 42 U.S.C. § 1983. *See Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822–23, 473 N.E.2d 1128 (1985)(MCRA is "coextensive with 42 U.S.C. § 1983 ..., except that the Federal statute requires State action whereas its State counterpart does not"). Nelson's MCRA claim is based upon the same allegations of arrest without probable cause and excessive force as his federal civil rights claim. Therefore, the same factual disputes which preclude summary judgment for defendants on Nelson's § 1983 claim preclude it on his MCRA claim as well. Accordingly, defendants' motion for summary judgment on Nelson's MCRA claim is **DENIED**.

### III. *CONCLUSION*

For the reasons discussed above, defendants' motion for summary judgment [docket entry # 12] is **DENIED**, and Nelson's request to amend his complaint to add the names of the unknown officers is **GRANTED**.

**SO ORDERED**