# United States Court of Appeals
## For the First Circuit

No. 09-1370

GREG SCHUBERT,

Plaintiff, Appellant,

v.

CITY OF SPRINGFIELD AND
SPRINGFIELD POLICE OFFICER J.B. STERN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor,  U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Stahl, Circuit Judges.

Alan Jay Black for appellant.
Kevin B. Coyle for appellee Stern.
Edward M. Pikula, City Solicitor, with whom John T. Liebel,
Chief of Litigation, was on brief for appellee City of Springfield.

December 23, 2009

**STAHL**, **Circuit Judge**.  Plaintiff-Appellant Greg Schubert brought a civil rights claim pursuant to 42 U.S.C. § 1983 against the City of Springfield and police officer J.B. Stern.[1]  Schubert alleged that his Fourth and Fourteenth Amendment rights were violated when Officer Stern stopped him in front of the Springfield courthouse to investigate Schubert's possession of a handgun.  The district court granted summary judgment in favor of the officer as to all claims against him and dismissed sua sponte Schubert's claims against Officer Stern's employer, the City of Springfield.  Having carefully reviewed the facts of the case and the applicable case law, we affirm the district court's decision in full.

## I.  Background

A. Relevant Facts

Because we are reviewing a summary judgment order granted in favor of the defendants, we evaluate the record "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party," in this case Schubert.  Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).  We thus relate the facts with this standard in mind.

Schubert is a prominent criminal defense attorney who has worked in Springfield, Massachusetts for approximately thirty years.  On July 21, 2006, Officer Stern, seated in his patrol car

---

[1]He also brought various state civil rights claims and state law tort claims against the defendants.

near the Springfield courthouse, observed Schubert walking toward the courthouse. The location is considered a high-crime area. Schubert was dressed in a suit with an unbuttoned jacket and was carrying a briefcase. Stern noted that Schubert was also carrying a handgun in a holster. Despite the very hot weather that day, Schubert was wearing his suit jacket, apparently in order to conceal the handgun; however, he had the jacket unbuttoned, which allowed the officer to see the weapon. According to Stern, several passers-by also noticed Schubert's gun and alerted the officer to the firearm by waving and pointing. However, a subsequent investigation of the incident by the police department produced no witnesses or other proof of Stern's allegation regarding the passers-by.

On Schubert's account of the events, once Stern noticed Schubert's partially concealed weapon, the officer leaped from his cruiser in a "dynamic and explosive" manner, with his gun un-holstered. Stern then pointed his weapon at Schubert's face. The officer ordered Schubert to stop and put his hands in the air. Schubert complied. When asked if he had a weapon, Schubert responded that he did and that he had a license to carry. While still pointing his gun at Schubert, Stern reached inside Schubert's jacket and removed the weapon from its holster. Stern then walked backward toward his cruiser, set his gun down, and removed the clip and chambered round from Schubert's gun. Schubert replied in the

negative when Stern asked if he was carrying any other weapons. Stern then frisked Schubert and asked him for his license to carry. Schubert produced his "Class A" gun license, which also indicated that Schubert was an attorney. He also handed over his driver's license.

Stern ordered Schubert to stay where he was, in the street in front of the police cruiser, and Stern took the gun, ammunition and licenses and got into his cruiser. The officer verified Schubert's driver's license and attempted to verify the validity of his gun license. In Schubert's version of the facts, Schubert stayed in front of the cruiser for several minutes, then moved to ask Stern if he could stand in the shade because it was a hot day.[2] Stern denied the request. Shortly thereafter Stern escorted Schubert into the back of the cruiser. Inside the vehicle, Stern partially Mirandized Schubert, see Miranda v. Arizona, 384 U.S. 436, 478-79 (1966), mentioned the possibility of a criminal charge, and told Schubert that he (Stern) was the only person allowed to carry a weapon on his beat.

Stern continued to attempt to verify the validity of Schubert's weapons license, but because Massachusetts lacked a centralized database containing such information, the officer soon

---

[2]Stern alleges that Schubert moved repeatedly and a later police department investigation uncovered one witness who corroborated that account. However, given the summary judgment standard we do not consider this version of the facts.

realized that the inquiry could take a significant amount of time. Thus, about five minutes after moving Schubert into the cruiser, Stern told Schubert that he was free to go, but that Schubert would have to retrieve his gun and gun license from the Springfield police department. The entire stop took about ten minutes.

On July 26, 2006, Schubert filed a citizen's complaint against Stern for his conduct on July 21. As a result of the report, the Springfield Police Commissioner recommended that Stern be retrained on Massachusetts firearms law but found no specific wrongdoing on Officer Stern's part and did not recommend disciplinary action.

B. Proceedings Below

On March 8, 2007, Schubert filed an eleven-count complaint in the U.S. District Court for the District of Massachusetts against Stern and the City of Springfield. Schubert asserted federal civil rights claims pursuant to 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments, accompanied by state civil rights and tort claims. Stern moved for summary judgment, and after a motion hearing, the district court granted Stern's motion as to all claims against him. The court sua sponte dismissed with prejudice the federal claims against the City of Springfield and dismissed the state claims against the City without prejudice. This appeal followed.

## II.  Discussion

A.  Standard of Review

We review the district court's grant of summary judgment de novo.  We evaluate the record in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of Schubert.  See Feliciano de la Cruz, 218 F.3d at 5.  We will uphold a district court order granting summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).

B.  Fourth Amendment Claim

Schubert primarily contends that Stern lacked reasonable suspicion to stop him and that the scope of the stop was not reasonably related to the officer's original purpose.  Schubert also argues that there are unresolved material facts that preclude summary judgment, that the district court failed to view the evidence in the light most favorable to Schubert, and that the opinion below was "unsupported by any evidence other than [the court's] philosophical views" about gun control.

The Fourth Amendment protects against unreasonable searches and seizures.  See U.S. Const. Amend. IV.  When police conduct rises to the level of an arrest it is a seizure that requires probable cause under the Warrant Clause of the Fourth

Amendment. See Terry v. Ohio, 392 U.S. 1, 20 (1968). There are, however, certain encounters between police and private citizens, called Terry stops, that fall short of the intrusiveness of a full arrest. These encounters require "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat." Id. When conducting a Terry stop, a police officer may briefly detain an individual for questioning if the officer has "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30); see also United States v. Wright, 582 F.3d 199, 205 (1st Cir. 2009).

In determining whether a Terry stop is justified, our inquiry involves two steps, first, "whether the officer's action was justified at its inception," and second, "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. The initial stop requires reasonable suspicion, which must be rooted in "a particularized and objective basis" for suspecting illegal conduct on the part of the person stopped. Wright, 582 F.3d at 205 (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). The particularity requirement is satisfied by a finding "grounded in specific and articulable facts." United States v. Espinoza, 490 F.3d 41, 47 (1st Cir. 2007) (quoting United States v. Hensley, 469 U.S. 221, 229 (1985)). The objective component requires courts to

"focus not on what the officer himself believed but, rather, on what a reasonable officer in his position would have thought." Id.

1. The Initial Stop

Schubert argues that Stern was unjustified in stopping him initially because Stern did not have an articulable suspicion, based on the totality of the circumstances, to detain Schubert. We disagree. Stern had an articulable, objective basis for his reasonable suspicion that Schubert may have been engaged in criminal activity: the officer observed Schubert walking toward the Springfield courthouse carrying a gun. This simple, undisputed fact provided a sufficient basis for Stern's concern that Schubert may have been about to commit a serious criminal act, or, at the very least, was openly carrying a firearm without a license to do so. Schubert maintains that his suit jacket was meant to conceal the weapon and that Stern was unable to produce any of the passers-by that he claimed had alerted him to the existence of Schubert's gun. The fact remains, however, that the officer saw a man carrying a gun in a high-crime area, walking toward an important public building.[3]

Schubert contends that his clothing, his age, and the fact that he was carrying a briefcase are factors that should undercut the reasonableness of Stern's suspicion. We are not

---

[3]In addition, Stern noted that in his experience, most people who carry firearms in Springfield are not licensed to do so.

persuaded. A Terry stop is intended for just such a situation, where the officer has a reasonable concern about potential criminal activity based on his "on-the-spot observations," and where immediate action is required to ensure that any criminal activity is stopped or prevented. Terry, 392 U.S. at 20. We need not outline in detail the obvious and potentially horrific events that could have transpired had an officer noted a man walking toward the courthouse with a gun and chosen not to intervene. In addition, "[u]nder Terry, the test is whether the circumstances give rise to a reasonable suspicion of criminal activity, not whether the defendant's actions are subject to no reasonable innocent explanation." United States v. Stanley, 915 F.2d 54, 57 (1st Cir. 1990). It is clear in this case that, in hindsight, Schubert in fact posed no threat to public safety. However, on these facts, Officer Stern certainly had reasonable suspicion to stop the unknown armed man in order to ascertain his identity, his authority to possess the gun, and his intentions.

Schubert also contends that there are material facts in dispute which should bar resolution of this case at the summary judgment stage. He points to the following: (1) Stern claimed that the gun was tucked into Schubert's pants or held in a pants holster while Schubert asserts that the gun was in fact holstered on his hip; and (2) Stern claimed that passers-by noticed Schubert's gun, while Schubert asserts that the gun was not "visible to the average

person walking toward or past the Plaintiff on the street." However, these are not material factual differences that would sway the outcome of the litigation. The precise location of the gun is inconsequential; what matters is that Stern observed the weapon on Schubert's person. Further, whether or not passers-by saw the gun is immaterial to the question of whether an objective officer who observed Schubert walking in such a manner would possess reasonable suspicion of criminal activity.[4]

Finally, we briefly note that Schubert's contention that the district court's opinion was "unsupported by any evidence other than [the court's] philosophical views" about gun control is far off base. The opinion below rested on sound, undisputed facts regarding an officer's observation of an armed man approaching a courthouse. The appellant makes no colorable showing that the lower court's conclusion was based on something other than the facts.

---

[4]In addition, Schubert's reliance upon Flowers v. Fiore, 359 F.3d 24 (1st Cir. 2004), is misplaced. In Flowers, this court upheld the Terry stop of a motorist who fit the description of a possible armed suspect. Id. at 34 (stressing substantial and serious nature of government interest in stopping potential armed attack). Here, unlike in Flowers, a police officer stopped a man that he definitively knew was armed and approaching a courthouse in a high-crime area. The officer's ground for suspicion in this case was greater than that in Flowers as the officer here could confirm with his own eyes that Schubert indeed possessed a weapon.

We thus conclude that the district court had ample reason to conclude that Officer Stern's investigatory stop was justified at its inception.

2. The Scope of the Search

Schubert also contends that the manner and length of the stop exceeded the circumstances which justified the stop in the first place. Schubert reasons that once he produced his license to carry, the officer should have released him and ended the encounter. Schubert also takes issue with the manner in which Stern suddenly emerged from the police cruiser with his weapon drawn. Further, Schubert questions Stern's subsequent five-minute detention of Schubert in the rear of the cruiser, during which time he partially Mirandized Schubert and mentioned the possibility of charging him with a crime. Finally, Schubert argues that Stern unreasonably confiscated his weapon, requiring Schubert to retrieve it from the police department.

However, as the district court correctly concluded, once Stern had reasonable suspicion justifying a stop, he was permitted to take actions to ensure his own safety. See Schubert v. City of Springfield, 602 F.Supp.2d 254, 257 (D. Mass. 2009). The officer took several reasonable steps given that Schubert was an unknown armed man walking in that particular location: he emerged quickly from his vehicle, drew his gun, executed a pat-frisk, requested identification and a gun license, attempted to confirm the validity

of the licenses, and escorted Schubert into the cruiser after Schubert moved from the position in which the officer had instructed him to remain. All these actions were related in scope to the circumstances that justified the initial stop, namely, Schubert's open possession of a weapon in front of a courthouse. Stern's concern for his own safety and for the safety of others was the context for this stop. It is "clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Stanley, 915 F.2d at 57 (quoting Terry, 392 U.S. at 24).[5]

Further, we do not agree with Schubert's contention that the gun license was valid on its face and therefore the several minute delay during which Stern attempted to confirm the validity

---

[5]Schubert cites Nelson v. City of Cambridge, 101 F.Supp.2d 44, 47-48 (D. Mass. 2000), in support of his claim that the means exceeded the scope of the stop. The case is inapposite. In Nelson, the district court denied summary judgment and held that a reasonable jury could find that the means used to accomplish a stop were excessive where officers stopped a suspect at gunpoint, frisked him, and then continued to restrain him for an additional fifteen to thirty minutes after ascertaining that he was not armed, did not match a robbery suspect's height or age, was identified by another person as being rightfully in the location, and had provided a plausible explanation for his meandering down the street. Id. at 47. Schubert argues that Stern was not investigating a crime like the one in Nelson. We agree, though not to the benefit of Schubert's position. Here, the officer ascertained visually that Schubert possessed a gun in a high-crime area near a courthouse. This scenario is distinct from Nelson, where the suspect was held for a significant length of time after it was determined that he was not armed or involved in the suspected crime.

of the license was unreasonable. Just as an officer is justified in attempting to confirm the validity of a driver's license, such a routine check is also valid and prudent regarding a gun license. As it happens, Massachusetts did not have a simple way for police officers to conduct such a check, so Stern's effort to do so took several minutes. But the entire stop took only ten minutes and when Stern realized that he would not be able to confirm the gun license within a reasonable time, he sensibly opted to terminate the stop and release Schubert, but retain the weapon.

We thus conclude that the district court correctly held that Stern acted within the permissible scope of his initial Terry stop of Schubert. Therefore, having already determined that the initial stop complied with Terry, we affirm the district court's grant of summary judgment on Schubert's Fourth Amendment claim.

C. Second Amendment Claim

Schubert also argues that the officer's stop violated Schubert's Second Amendment right to bear arms. He cites to the Supreme Court's recent decision in District of Columbia v. Heller, 128 S.Ct. 2783 (2008), to support his assertion that because the right to bear arms is a "fundamental individual right," Officer Stern had "absolutely no reason to interfere with the lawful exercise of this right."

Schubert did not assert a violation of his Second Amendment right in his original complaint. Nor did he file an

amended complaint to alert the court and the other parties to such a claim. He also did not raise the claim in his written opposition to summary judgment. The issue was first raised by Schubert at oral argument on the motion for summary judgment. Having reviewed the transcript, we conclude that his counsel's references to a Second Amendment issue were extremely brief and were unsupported by citations to specific case law. In addition, counsel did not frame his comments on the issue as providing an additional, specific ground for liability against Stern and the City.

We thus conclude that Schubert failed properly to raise a Second Amendment claim in the court below, and we therefore decline to entertain his appellate argument on this issue. See, e.g., In re Ruah, 119 F.3d 46, 51 (1st Cir. 1997); McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) ("Overburdened trial judges cannot be expected to be mind readers. If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review."). Our conclusion is not altered by the fact that the district court chose briefly to address Schubert's assertions regarding the Second Amendment in a short footnote to its summary judgment memorandum.

4. Other Claims

Because we affirm the district court's grant of summary judgment as to the federal claims against Stern, we also affirm the

lower court's sua sponte dismissal with prejudice of Schubert's federal claims against the City. As plaintiff concedes, those claims depend on a finding of liability on the part of Officer Stern. See Jarret v. Town of Yarmouth, 331 F.3d 140, 151 (1st Cir. 2003) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). In addition, we affirm the district court's grant of summary judgment in favor of Stern as to all other claims against him, and the court's sua sponte dismissal, without prejudice, of the remaining state law claims against the City, for the reasons given by the district court.[6]

### III. Conclusion

For the foregoing reasons, we **affirm** the district court's grant of summary judgment in favor of Stern, the dismissal with prejudice of the federal claims against the City of Springfield, and the dismissal without prejudice of the remaining state law claims against the City.

---

[6]Schubert only raises the issue of whether his detention amounted to a de facto arrest during his discussion of the state tort law claims of false arrest and false imprisonment. Because we affirm the dismissal of those claims for the reasons outlined by the district court, we do not reach the de facto arrest issue.